

BEF/JFZ: USAO2015R00416



## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | * | |
| | * | |
| **v.** | * | **CRIMINAL NO.** |
| | * | PX 16 cr 608 |
| **KEREM CELEM,** | * | **(Bank Fraud Conspiracy, 18 U.S.C.** |
| **THOMAS HARDIN FIRTH,** | * | **§ 1349; Bank Fraud, 18 U.S.C. § 1344;** |
| **MICHAEL JOHN STOLL,** | * | **False Statement on Loan Application,** |
| **BRIAN ALBERT ARMSTRONG, and** | * | **18 U.S.C. § 1014; Aiding and Abetting,** |
| **DIMITRIOS BALOURDOS,** | * | **18 U.S.C. § 2; Forfeiture, 18 U.S.C.** |
| | * | **§ 982(a)(2), 21 U.S.C. § 853,** |
| **Defendants** | * | **28 U.S.C. § 2461(c))** |
| | * | |

*******

### INDICTMENT

### COUNT ONE
### (Bank Fraud Conspiracy)

The Grand Jury for the District of Maryland charges that:

### Parties and Entities

At all times relevant to this Indictment:

1.     Kavasko Corporation, also known as Adige Inc., Kavasko Corp., Kavasko LLC,

KC Financial Services Corporation, KC Financial Services and Trust Corp, KC Auto Gallery,

KCK Auto Brokerage, and KC Marketing Services, LLC (collectively referred to as "Kavasko"),

was a corporation registered in Virginia that served as a luxury vehicle broker and operated in

the Fairfax County, Virginia area.

2.     Florida Gateway Regional Center LLC was a limited liability company registered

in Virginia.

3.     Dealership A, Dealership B, Dealership C, Dealership D, Dealership E, and

Dealership F were licensed car dealers doing business in the District of Maryland.

4.     **KEREM CELEM** ("**CELEM**") was a resident of Virginia; the owner, president, and director of Kavasko Corporation; and the owner, registered agent, and organizer of Florida Gateway Regional Center LLC.

5.     **THOMAS HARDIN FIRTH** ("**FIRTH**") was a resident of Virginia and Vice President of Kavasko.

6.     **MICHAEL JOHN STOLL** ("**STOLL**") was a resident of Virginia and worked with Kavasko as a salesman/recruiter.

7.     **BRIAN ALBERT ARMSTRONG** ("**ARMSTRONG**") was a resident of Maryland and the sales manager at Dealership A.

8.     **DIMITRIOS BALOURDOS** ("**BALOURDOS**") was a resident of Maryland and a sales representative at Dealership A.

9.     Co-Conspirator 1 was a resident of Maryland and acted as a straw buyer for the purchase of luxury vehicles on behalf of Kavasko.

10.     Co-Conspirator 2 was a resident of Maryland and acted as a straw buyer for the purchase of luxury vehicles on behalf of Kavasko.

11.     Co-Conspirator 3 was a resident of Virginia and acted as a straw buyer for the purchase of luxury vehicles on behalf of Kavasko.

12.     Co-Conspirator 4 was a resident of Maryland and acted as a straw buyer for the purchase of luxury vehicles on behalf of Kavasko.

13.     Company A was a Florida corporation that bought and sold vehicles for exportation outside the United States.

14.     Bank of America, N.A. ("Bank of America"); Capital One, N.A.; Fifth Third Bank; JP Morgan Chase Bank, N.A.; Manufacturers and Traders Trust Company; Citizens Bank;

SunTrust Bank; PNC Bank, N.A. ("PNC Bank"); U.S. Bank; and Wells Fargo Bank, N.A. (collectively referred to as the "Financial Institutions") were financial institutions within the meaning of 18 U.S.C. § 20 and had their deposits insured by the Federal Deposit Insurance Corporation.  Each of these entities did business in Maryland.

### The Conspiracy and Scheme to Defraud

15.     From in or about March 2013 through in or about November 2014, in the District of Maryland and elsewhere, the defendants,

**KEREM CELEM,**
**THOMAS HARDIN FIRTH,**
**MICHAEL JOHN STOLL,**
**BRIAN ALBERT ARMSTRONG, and**
**DIMITRIOS BALOURDOS,**

knowingly and willfully conspired with each other and with Co-Conspirator 1, Co-Conspirator 2, Co-Conspirator 3, Co-Conspirator 4, and other persons known and unknown to the Grand Jury, to execute and attempt to execute a scheme and artifice to defraud the Financial Institutions and to obtain monies, funds, credits, assets, and securities owned by and under the custody and control of the Financial Institutions, by means of materially false and fraudulent pretenses, representations and promises (the "scheme to defraud"), in violation of Title 18, United States Code, Section 1344.

### Manner and Means of the Conspiracy and Scheme to Defraud

16.     It was part of the conspiracy and scheme to defraud that **FIRTH**, **STOLL**, and other persons known and unknown to the Grand Jury arranged for straw buyers, including Co-Conspirator 1, Co-Conspirator 2, Co-Conspirator 3, and Co-Conspirator 4, to purchase luxury vehicles from various car dealerships, including Dealership A, Dealership B, Dealership C, Dealership D, Dealership E, and Dealership F.

17.     It was further part of the conspiracy and scheme to defraud that **FIRTH** and **STOLL** arranged for straw buyers to fraudulently obtain loans from the Financial Institutions so that **CELEM**, **FIRTH**, **STOLL**, **ARMSTRONG, BALOURDOS**, and other persons known and unknown to the Grand Jury could make money from the vehicle transactions.

18.     It further was part of the conspiracy and scheme to defraud that **STOLL** and other persons known and unknown to the Grand Jury recruited straw buyers, also known as "purchasing agents," at home improvement shows, job fairs, and bridal showcases, among other events.

19.     It was further part of the conspiracy and scheme to defraud that **FIRTH**, **STOLL**, and other persons known and unknown to the Grand Jury caused the straw buyers to sign "Non Exclusive Purchasing Agency Agreements" with Kavasko.  The "Non Exclusive Purchasing Agency Agreements" provided that Kavasko was "in need of purchasing agents to purchase … automobiles from various Automobile Dealerships and manufacturers, using [Kavasko's] own funds and utilizing purchasing agents' credit worthiness to do so."

20.     It was further part of the conspiracy and scheme to defraud that the "Non Exclusive Purchasing Agency Agreements" also provided that the "Purchasing Agent shall, on behalf of and at the direction of [Kavasko]: a) Negotiate with independent automobile dealerships with respect to prices, terms and deliveries for any and all automobiles; b) Enter into purchasing contracts with automobile dealers utilizing Purchasing Agent's own credit worthiness and in Purchasing Agent's own name; [and] c) upon full payment of automobile loan, if any, immediately transfer title of the automobile(s) to [Kavasko] or any such third party as directed by [Kavasko], and to execute all other documents necessary to transfer title of the automobile(s) upon request by [Kavasko]."

4

21.     It was further part of the conspiracy and scheme to defraud that **CELEM**, **FIRTH**, **STOLL**, and other persons known and unknown to the Grand Jury located specific makes and models of luxury vehicles that were for sale at local car dealerships by using Kavasko's contacts at those dealerships and by cold calling dealerships.

22.     It was further part of the conspiracy and scheme to defraud that **CELEM**, **FIRTH**, **STOLL**, and other persons known and unknown to the Grand Jury told, and caused others to tell, the straw buyers when a vehicle was ready for purchase, details about the vehicle, and the name and location of the dealership that was selling the vehicle.

23.     It was further part of the conspiracy and scheme to defraud that, when a vehicle was to be purchased from Dealership A, **BALOURDOS** served as the dealership sales representative on the transaction and **ARMSTRONG** ensured that a loan was approved for the purchase and that the sale was completed.

24.     It was further part of the conspiracy and scheme to defraud that **FIRTH**, **STOLL**, **ARMSTRONG, BALOURDOS**, and other persons known and unknown to the Grand Jury caused the straw buyers to seek loans from the Financial Institutions for the purchase of luxury vehicles, using the straw buyers' own credit.

25.     It was further part of the conspiracy and scheme to defraud that **CELEM**, **FIRTH**, **STOLL**, **ARMSTRONG, BALOURDOS**, and other persons known and unknown to the Grand Jury instructed and caused the straw buyers to make materially false and fraudulent representations on the credit applications that were submitted electronically to the Financial Institutions. The materially false statements included, among other things, that the straw buyers were the true purchasers of the vehicles.

5

26.     It was further part of the conspiracy and scheme to defraud that **CELEM**, **FIRTH**, **STOLL**, **ARMSTRONG, BALOURDOS**, and other persons known and unknown to the Grand Jury caused the straw buyers to sign Retail Installment Sale Contracts for the purchase of luxury vehicles on behalf of Kavasko and to falsely promise in those Retail Installment Sale Contracts that the straw buyers would not sell or transfer their interests in the vehicles without first obtaining written permission from the Financial Institutions.

27.     It was further part of the conspiracy and scheme to defraud that **CELEM**, **FIRTH**, **STOLL**, and other persons known and unknown to the Grand Jury caused the straw buyers to sell to Kavasko the straw buyers' interests in the luxury vehicles the straw buyers had purchased, in exchange for "bills of sale" and commission payments.

28.     It was further part of the conspiracy and scheme to defraud that **CELEM**, **FIRTH**, **STOLL**, and other persons known and unknown to the Grand Jury caused the straw buyers to sell to Kavasko the straw buyers' interests in the luxury vehicles that the straw buyers had purchased, without first obtaining written permission from the Financial Institutions that had been assigned the Retail Installment Sale Contracts for those vehicles by the car dealerships.

29.     It was further part of the conspiracy and scheme to defraud that **CELEM**, **FIRTH**, and other persons known and unknown to the Grand Jury sold the luxury vehicles purchased by the straw buyers to various companies, including Company A, knowing that the vehicles would be exported outside the United States without first obtaining written permission from the Financial Institutions that had been assigned the Retail Installment Sale Contracts for those vehicles by the car dealerships.

30.     It was further part of the conspiracy and scheme to defraud that **CELEM**, **FIRTH**, **STOLL**, and other persons known and unknown to the Grand Jury eventually stopped

making payments on vehicle loans fraudulently obtained from the Financial Institutions, and the cessation in payments caused the loans to go into default.

## Overt Acts

31.     In furtherance of the conspiracy and scheme to defraud, and to effect the objects thereof, the defendants, their co-conspirators, and others known and unknown to the Grand Jury committed the following overt acts in the District of Maryland and elsewhere:

### Co-Conspirator 1 and Land Rover 1

a.     On or about December 17, 2013, **STOLL** caused Co-Conspirator 1 to make false and fraudulent representations to PNC Bank on a credit application for a loan to purchase a 2014 Land Rover Range Rover with a Vehicle Identification Number ("VIN") ending in 5705 ("Land Rover 1") from Dealership B, namely, that Co-Conspirator 1 was the true purchaser of Land Rover 1 and that Co-Conspirator 1's salary was $7,500 per month.

b.     On or about December 17, 2013, **STOLL** caused Co-Conspirator 1 to sign a Retail Installment Sale Contract for the purchase of Land Rover 1, which contract included a promise not to sell or transfer Co-Conspirator 1's interest in Land Rover 1 without first obtaining permission from PNC Bank.

c.     On or about January 2, 2014, **STOLL** caused Co-Conspirator 1 to sell Co-Conspirator 1's interest in Land Rover 1 to Kavasko without first obtaining written permission from PNC Bank.

d.     On or about January 6, 2014, **CELEM**, **FIRTH**, and other persons known and unknown to the Grand Jury sold Land Rover 1 to Company A without first obtaining written permission from PNC Bank.

**Co-Conspirator 1 and Land Rover 2**

e.       On or about January 11, 2014, **STOLL** caused Co-Conspirator 1 to make false and fraudulent representations to Bank of America on a credit application for a loan to purchase a 2014 Land Rover Range Rover Sport with a VIN ending in 6234 ("Land Rover 2") from Dealership A, namely, that Co-Conspirator 1 was the true purchaser of Land Rover 2.

f.       On or about January 11, 2014, **STOLL** and **BALOURDOS** caused Co-Conspirator 1 to sign a Retail Installment Sale Contract for the purchase of Land Rover 2, which contract included a promise not to sell or transfer Co-Conspirator 1's interest in Land Rover 2 without first obtaining permission from Bank of America.

g.       On or about January 11, 2014, Kavasko employees, working under the direction of **CELEM**, caused Co-Conspirator 1 to sell Co-Conspirator 1's interest in Land Rover 2 to Kavasko without first obtaining written permission from Bank of America.

h.       On or about January 22, 2014, **CELEM**, **FIRTH**, and other persons known and unknown to the Grand Jury sold Land Rover 2 to Company A without first obtaining written permission from Bank of America.

**Co-Conspirator 2 and Land Rover 3**

i.       On or about February 8, 2014, **ARMSTRONG, BALOURDOS,** and other persons known and unknown to the Grand Jury, on behalf of Dealership A and Co-Conspirator 2, electronically submitted to SunTrust Bank a credit application for a loan to purchase a 2014 Land Rover Range Rover Sport with a VIN ending in 5316 ("Land Rover 3") in Co-Conspirator 2's name that contained false and fraudulent representations, namely, that Co-Conspirator 2 was the true purchaser of Land Rover 3.

8

      j.      On or about February 8, 2014, **ARMSTRONG** and **BALOURDOS** caused Co-Conspirator 2 to sign a Retail Installment Sale Contract for the purchase of Land Rover 3, which contract included a promise not to sell or transfer Co-Conspirator 2's interest in Land Rover 3 without first obtaining permission from SunTrust Bank.

      k.      On or about February 8, 2014, Kavasko employees, working under the direction of **CELEM**, caused Co-Conspirator 2 to sell Co-Conspirator 2's interest in Land Rover 3 to Kavasko without first obtaining written permission from SunTrust Bank.

      l.      On or about February 6, 2014, **CELEM**, **FIRTH**, and other persons known and unknown to the Grand Jury sold Land Rover 3 to Company A without first obtaining written permission from SunTrust Bank.

### Co-Conspirator 3 and Land Rover 4

      m.      On or about May 29, 2014, **FIRTH** caused Co-Conspirator 3 to make false and fraudulent representations on a credit application that Co-Conspirator 3 signed when Co-Conspirator 3 applied for a loan to purchase a 2014 Land Rover Range Rover Sport with a VIN ending in 2964 ("Land Rover 4") from Dealership A, namely, that Co-Conspirator 3 was the true purchaser of Land Rover 4.

      n.      On or about May 29, 2014, **BALOURDOS** caused Co-Conspirator 3 to sign a Retail Installment Sale Contract for the purchase of Land Rover 4, which contract included a promise not to sell or transfer Co-Conspirator 3's interest in Land Rover 4 without first obtaining permission from SunTrust Bank.

      o.      On or about May 29, 2014, **FIRTH** and a Kavasko employee working under the direction of **CELEM** caused Co-Conspirator 3 to sell Co-Conspirator 3's interest in Land Rover 4 to Kavasko without first obtaining written permission from SunTrust Bank.

p.         On or about May 31, 2014, **CELEM**, **FIRTH**, and other persons known and unknown to the Grand Jury sold Land Rover 4 to Company A without first obtaining written permission from SunTrust Bank.

### Co-Conspirator 4 and Land Rover 5

q.         On or about June 7, 2014, **CELEM** caused Co-Conspirator 4 to agree to sell Co-Conspirator 4's interest in a 2014 Land Rover Range Rover Sport with a VIN ending in 6766 ("Land Rover 5") to Kavasko and paid $2,400 to Co-Conspirator 4 via a company check.

r.         On or about June 21, 2014, **FIRTH** and other persons known and unknown to the Grand Jury, on behalf of Dealership B and Co-Conspirator 4, electronically submitted to SunTrust Bank a credit application for a loan to purchase Land Rover 5 in Co-Conspirator 4's name that falsely represented that:  (1) Co-Conspirator 4 was the true purchaser of Land Rover 5; (2) Co-Conspirator 4's employer was "Florida Gateway Regional" (a company owned by **CELEM**); (3) Co-Conspirator 4's occupation was "DIRECTOR OF SALES;" and (4) Co-Conspirator 4's salary was $156,500 per year.

s.         On or about June 21, 2014, **FIRTH** signed a Retail Installment Sale Contract for the purchase of Land Rover 5 in Co-Conspirator 4's name, which contract included a promise not to sell or transfer Co-Conspirator 4's interest in Land Rover 5 without first obtaining permission from SunTrust Bank.

18 U.S.C. § 1349

## COUNTS TWO THROUGH SIX
### (Bank Fraud)

The Grand Jury for the District of Maryland further charges that:

1.      Paragraphs 1 through 14 and 16 through 31 of Count One are incorporated here and constitute a scheme to defraud Financial Institutions as described in paragraph 15 of Count One (the "scheme to defraud").

2.      On or about the following dates, in the District of Maryland and elsewhere, the defendants named below knowingly and willfully executed and attempted to execute the scheme to defraud by making and causing to be made materially false representations and promises to secure loans from the listed financial institutions for vehicle purchases, as detailed below:

| Count | Defendant(s) | Date | Financial Institution | False Representations and Promises |
|---|---|---|---|---|
| 2 | **MICHAEL JOHN STOLL** | December 17, 2013, to January 2, 2014 | PNC Bank | Caused Co-Conspirator 1 to: (1) falsely represent that Co-Conspirator 1 was the true purchaser of Land Rover 1 from Dealership B; and (2) falsely promise not to sell Co-Conspirator 1's interest in Land Rover 1 without PNC Bank's written permission. |
| 3 | **MICHAEL JOHN STOLL and DIMITRIOS BALOURDOS** | January 11, 2014 | Bank of America | Caused Co-Conspirator 1 to: (1) falsely represent that Co-Conspirator 1 was the true purchaser of Land Rover 2 from Dealership A; and (2) falsely promise not to sell Co-Conspirator 1's interest in Land Rover 2 without Bank of America's written permission. |

| Count | Defendant(s) | Date | Financial Institution | False Representations and Promises |
|---|---|---|---|---|
| 4 | **BRIAN ALBERT ARMSTRONG and DIMITRIOS BALOURDOS** | February 8, 2014 | SunTrust Bank | Caused Co-Conspirator 2 to: (1) falsely represent that Co-Conspirator 2 was the true purchaser of Land Rover 3 from Dealership A; and (2) falsely promise not to sell Co-Conspirator 2's interest in Land Rover 3 without SunTrust Bank's written permission. |
| 5 | **THOMAS HARDIN FIRTH and DIMITRIOS BALOURDOS** | May 29, 2014 | SunTrust Bank | Caused Conspirator 3 to: (1) falsely represent that Co-Conspirator 3 was the true purchaser of Land Rover 4 from Dealership A; and (2) falsely promise not to sell Co-Conspirator 3's interest in Land Rover 4 without SunTrust Bank's written permission. |
| 6 | **THOMAS HARDIN FIRTH** | June 7, 2014, to June 21, 2014 | SunTrust Bank | (1) Falsely represented that Co-Conspirator 4 was the true purchaser of Land Rover 5 from Dealership A; and (2) falsely promised that Co-Conspirator 4 would not sell Co-Conspirator 4's interest in Land Rover 5 without SunTrust Bank's written permission. |

18 U.S.C. § 1344
18 U.S.C. § 2

## COUNTS SEVEN AND EIGHT
### (False Statement on Loan Application)

The Grand Jury for the District of Maryland further charges that:

1.       Paragraphs 1 through 14 and 16 through 31 of Count One are incorporated here.

2.       On or about the dates set forth below, in the District of Maryland and elsewhere, the defendants named below knowingly made and caused to be made false statements on credit applications for the purpose of influencing in any way the actions of the financial institutions specified below, the deposits of which were then insured by the Federal Deposit Insurance Corporation, that is, the defendants made and caused to be made false statements in credit applications submitted to these financial institutions for the purpose of securing loans for vehicle purchases:

| Count | Defendants | Date | Financial Institution | False Statement |
|---|---|---|---|---|
| 7 | **MICHAEL JOHN STOLL** | December 17, 2013 | PNC Bank | Caused Co-Conspirator 1 to falsely state in a credit application to finance the purchase of Land Rover 1 that Co-Conspirator 1 was employed with a monthly salary of $7,500. |
| 8 | **THOMAS HARDIN FIRTH** | June 21, 2014 | SunTrust | Falsely stated in a credit application to finance the purchase of Land Rover 5 that Co-Conspirator 4 was employed with an annual salary of $156,500. |

18 U.S.C. § 1014
18 U.S.C. § 2

## **FORFEITURE ALLEGATION**

The Grand Jury for the District of Maryland further finds that:

1.      Pursuant to Federal Rule of Criminal Procedure 32.2, notice is hereby given to the defendants that the United States will seek forfeiture as part of any sentence in accordance with Title 18 United States Code, Section 982(a)(2), Title 21, United States Code, Section 853, and Title 28, United States Code, Section 2461(c), in the event of the defendants' convictions on Counts One through Eight of the Indictment.

2.      As a result of the offenses charged in Counts One through Eight, the defendants,

**KEREM CELEM,**
**THOMAS HARDIN FIRTH,**
**MICHAEL JOHN STOLL,**
**BRIAN ALBERT ARMSTRONG, and**
**DIMITRIOS BALOURDOS,**

shall forfeit to the United States all property constituting, or derived from, proceeds obtained, directly or indirectly, as a result of such violations, including but not limited to a money judgment in the amount of at least $3,000,000, and all interest and proceeds traceable thereto, in that such sum in aggregate is proceeds obtained, directly or indirectly, as a result of such violations.

3.      If any of the property described above as being subject to forfeiture, as a result of any act or omission of any defendant:

        a.      cannot be located upon the exercise of due diligence;

        b.      has been transferred or sold to, or deposited with, a third person;

        c.      has been placed beyond the jurisdiction of the Court;

        d.      has been substantially diminished in value; or

14

      e.      has been commingled with other property which cannot be divided

without difficulty;

it is the intent of the United States, pursuant to 21 U.S.C. § 853(p), to seek forfeiture of any other

property of said defendant up to the value of the forfeitable property, that is, at least $3,000,000.

18 U.S.C. § 982(a)(2)(A)
21 U.S.C. § 853(p)
28 U.S.C. § 2461(c)

*Rod J. Rosenstein / BEF*

Rod J. Rosenstein
United States Attorney

A TRUE BILL:

**SIGNATURE REDACTED**

~~Foreperson~~

Dated:  December 21, 2016