IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | * | |
| | * | |
| v. | * | **CRIMINAL NO. PX-16-608** |
| | * | |
| **KEREM CELEM,** | * | |
| | * | |
| Defendant | * | |
| | * | |
| ******* | | |

## GOVERNMENT'S OPPOSITION TO DEFENDANT'S
## MOTION FOR RELEASE FROM PRETRIAL DETENTION

The United States of America, by and through its undersigned attorneys, Erin B. Pulice and Bryan E. Foreman, hereby respectfully files its opposition to the Defendant's Motion for Release from Pretrial Detention. (ECF No. 76.) For the reasons discussed below, the Government respectfully requests that the Court deny the Defendant's motion and affirm the Magistrate Court's decision to detain the defendant pending trial.

### Background

On December 21, 2016, a grand jury sitting in this District charged the Defendant, together with four others, with conspiracy to commit bank fraud, in violation of in 18 U.S.C. § 1349. According to the indictment, the defendant, Kerem Celem, was the owner, president, and director of Kavasco Corporation. Between March 2013 and November 2014, the defendant conspired with Thomas Firth, Michael Stoll, Brian Armstrong, Dimitrios Balourdos, and at least four other coconspirators to defraud a number of financial institutions, including Bank of America, Capital One, Fifth Third Bank, JP Morgan Chase Bank, Manufacturers and Traders Trust Company, Citizens Bank, PNC Bank, US Bank, and Wells Fargo (collectively, "the financial institutions").

Celem and his codefendants, Firth and Stoll, located luxury vehicles that were for sale at local car dealerships. Celem and his codefendants then caused straw buyers to apply for loans from the financial institutions. The loan applications included materially false statements, and falsely claimed that the straw buyers were the true purchasers of the cars. As part of the conspiracy, the straw buyers then sold their interest in the luxury cars to Celem's company, Kavasco, without first obtaining written permission from the financial institutions. Defendant Celem and Firth then sold the luxury cars to various companies, knowing that the cars would be exported outside the United States. Celem, Firth, Stoll, and others eventually stopped making payments on the loans that had been fraudulently obtained from the financial institutions.

On February 9, 2017, Defendant Celem had his initial appearance before Magistrate Judge Day and was temporarily detained pending a detention hearing. (ECF Nos. 32 and 33.) On February 10, 2017, a detention hearing was held before Judge Day. After considering the factors in 18 U.S.C. § 3142, Judge Day ordered the Defendant detained pending trial. (ECF Nos. 35 and 36.) In particular, the Court found that detention was warranted because a preponderance of the evidence indicated that no condition or combination of conditions would reasonably assure the Defendant's appearance. (ECF No. 35.) The Court cited to the Defendant's lack of significant community or family ties in the district; significant ties outside of the United States; prior attempt(s) to evade law enforcement; and use of alias(es) or false documents. *Id.*

On May 8, 2017, the Defendant filed a Motion for Release from Custody. (ECF No. 66.) In that motion, the Defendant argued that four purportedly new facts justified his release, including (1) the possibility of a halfway house placement; (2) the Defendant's significant contacts within the metropolitan D.C. area; (3) his alleged inability to travel; and (4) the volume of discovery in this

case. (ECF No. 66 at 1-3.) The Government responded in opposition. (ECF No. 68.) On May 12, 2017, the Court denied the Defendant's motion without granting a hearing. (ECF No. 67.)

On August 2, 2017, the Defendant filed a second Motion for Release from Custody/Appeal of Detention Order. (ECF No. 76.) For the reasons that follow, the Defendant's motion should be denied.

## Argument

**I.     Because there is actual evidence of flight in this case, no condition or combination of conditions can reasonably assure this defendant's appearance.**

This Defendant has lied to Pretrial Services, possesses another individual's identification information, and has used his significant international ties to attempt to evade law enforcement in the past. As such, a preponderance of the evidence indicates that not condition or combination of conditions will reasonably assure his presence at future court proceedings, and the Defendant should remain detained pending trial.

As the Defendant readily admits, he has significant business and personal ties outside of the United States. He was born in Austria, and his extended family lives in Turkey, where he was raised. (Def.'s Mot. ECF No. 76 at 2.) He is a dual citizen of the United States and Turkey, and possesses passports from both countries. Part of the scheme with which the Defendant is charged involved exporting cars overseas. The Defendant frequently traveled abroad, and appears to have foreign financial interests. (Exhibit 1 and Exhibit 2.) For instance, in 2014 alone, the Defendant took thirteen international flights. (Exhibit 1.) Moreover, while the Defendant was in Turkey in December 2014, over the course of a seven-day time period between December 22, 2014, and December 29, 2014, the Defendant's coconspirator, Thomas Firth, wired $18,000 to various bank accounts located in Turkey, presumably at the direction of the Defendant. (Exhibit 2.) Based on the defendant's representations to Pretrial Services, he has the financial resources to flee. The Defendant represented

that he has monthly income of $30,000, savings of $12,000, and no liabilities.[1] Foreign travel, international ties, and financial means alone do not warrant detention. In this case, however, the Defendant has used those ties to evade law enforcement.

The timeline of the Defendant's foreign travel combined with his own statements to law enforcement are indicative of the Defendant's efforts to evade law enforcement. For instance, before any changes were brought, on December 9, 2014, the Defendant traveled to Turkey, by way of Germany, with plans to return to the United States on December 17, 2014. (Exhibit 2.) On December 12, 2014, three days after the Defendant left the United States, the Fairfax County Police executed search warrants at the Defendant's business and residence. After the execution of these search warrants, the Defendant did not return to the United States as planned. Instead, he remained overseas until March 23, 2015. (Exhibit 2.) Defendant Celem remained in the United States for just seven months before traveling abroad again on October 2, 2015, where he remained for approximately sixteen months until February 8, 2017. The Defendant was charged by sealed indictment in December 2016. (ECF No. 1.) The Defendant was arrested on February 8, 2017, at Dulles Airport, when he re-entered the United States.

Items found on the Defendant's person at the time of his arrest also indicate a potential plan to evade law enforcement. For instance, the Defendant had a credit report in the name of Individual A in the Defendant's briefcase at the time of his arrest. (Exhibit 3.) A photo of a Washington, D.C. identification card ("D.C. ID Card") in the name of Individual A was found on the Defendant's computer. (Exhibit 4.) The DC ID Card displays the Defendant's picture, height, and weight, but

---

[1] The Government notes that the defendant's financial information is unverified. Based on the Government's assessment of the defendant's U.S. finances, the information he provided to Pretrial Services not appear accurate. The Government, however, has not verified the defendant's resources abroad.

lists the name of Individual A.  Moreover, the Defendant's true date of birth was originally written on the application for the DC ID Card and then crossed off. (Exhibit 5; *compare* with Exhibit 6- Def.'s Virginia Driver's License.)  Not only does the Defendant possess two passports in his own name, but he also appears to have the personal identifying information of Individual A such that he has the ability to get a passport in Individual A's name, as well.

The Defendant's own statement to law enforcement after he was arrested at the airport corroborates the fact that the purpose of his foreign travel was to evade law enforcement. Following his arrest, after the Secret Service agent informed the Defendant of the charge he was facing, the Defendant offered "This is about the Ranger Rovers…it's a long story; this is why I stayed away." (ECF No. 76-1.) The clear implication is that the Defendant knew of the Government's investigation and remained abroad in order to avoid the potential consequences.  While it may be true that the Defendant did not know that he had been indicted by a federal grand jury until he returned to the United States in February 2017, at some point between December 12, 2014, and December 19, 2014, the date he had originally planned to return to the United States, the Defendant learned that his house and his business had been searched by law enforcement.  It is likely that this knowledge caused him to extend his trip to abroad from approximately one week to four months. The Defendant returned to the United States for several months before departing again for nearly sixteen months.  During that time, no additional search warrants were executed and the Defendant was indicted under seal. The Defendant likely felt that the Government's investigation had subsided and it was safe to return to the United States.  Now that the Defendant is aware that he is under federal indictment, he has additional motive to flee.

The Defendant's statement to law enforcement taken in its entirety is no more illuminating. The Defendant argues that he was seeking to address the issue with the Courts. His statement,

however, does not make that clear. He appears surprised by federal charge. After the agent shows the Defendant his identification, the Defendant exclaims, "Secret Service. It is federal. Wow! What did I do that is so bad?" He further states, "I will help you out with this, if you want to….You want to make a case out of bank fraud or whatever it is, I will tell you, but I need to talk to my lawyer…. But **because of this kind of stuff, I left**." (emphasis added.) When the Defendant offers to "help with the investigation" he appears to be looking for a way out of the charges, rather than voicing sincerity to address the issue with the Courts.

After considering the factors set forth in 18 U.S.C. § 3142 and the information presented at the detention hearing, the Magistrate Judge Day concluded that no condition or combination of conditions of release would reasonably assure the Defendant's appearance as required.

**II.    There are no conditions of release that would reasonably assure the Defendant's appearance at trial.**

The proposed conditions of release would not reasonably assure the Defendant's appearance. The Defendant contends that his surrendering of his passports to the Clerk's office and his agreement to obtain no new travel documents pending the resolution of his case are sufficient to assure his appearance. The false statement that the Defendant made to Pretrial Services at his initial interview, however, indicates that the Defendant is not a good candidate for pretrial supervision. During this interview, the Defendant told Pretrial Services that he lived at 6060 Tower Court in Alexandria, Virginia. This location is where a search warrant was executed on December 12, 2014. Moreover, the Defendant was evicted from that location in March of 2015. In fact, the defendant was found with eviction paperwork on his person when he was arrested at Dulles Airport. (Exhibit 7.) Moreover, when the Defendant was interviewed by law enforcement following his arrest just two days earlier, he provided yet a different address, in Woodbridge, Virginia.  (ECF No. 76-1 at 4:00.)

The Defendant submits that release to a halfway house would be sufficient. A halfway house, however, would not ameliorate concerns regarding the risk of nonappearance. A halfway house is not a detention facility, and there are no means of assuring that the defendant would remain there. Moreover, the Defendant would have full access to computers with very limited supervision, thus giving him additional opportunity to flee.

## **Conclusion**

For the reasons discussed above, the preponderance of the evidence establishes that no conditions of release will reasonably assure the Defendant's appearance as required.  The evidence supports the conclusions reached by Judge Day, that Defendant Celem's pre-trial detention is more than warranted.  As such, the Government respectfully requests this Court deny the Defendant's Motion to Appeal the Order of Detention.

                         Respectfully submitted,

                         Stephen M. Schenning
                         Acting United States Attorney

By:      /s/
          Erin B. Pulice
          Bryan E. Foreman
          Assistant United States Attorneys

**CERTIFICATE OF SERVICE**

     I HEREBY CERTIFY that, on August 16, 2017, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

                                           /s/
                                     Erin B. Pulice
                                     Assistant United States Attorney